UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOSEPH COLLINS,                      )
                                     )
          Petitioner,                )
                                     )    No.  4:04cv01194 RWS
                                     )                    (FRB)
                                     )
v.                                   )
                                     )
                                     )
MICHAEL BOWERSOX,[1]                 )
                                     )
          Respondent.                )


**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**


Presently before this Court is the pro se petition of

Missouri State prisoner Joseph Collins ("petitioner") for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 2-1.) All

pretrial matters have been referred to the undersigned United

States Magistrate Judge for appropriate disposition pursuant to 28

U.S.C. § 636(b).

On September 6, 2002, a jury in the city of St. Louis,

Missouri convicted petitioner of robbery and attempted robbery in

the first degree, and two corresponding counts of armed criminal

action, in connection with an incident which occurred on the night

---

[1]In his Petition, petitioner also names the Missouri Attorney General,
Jeremiah J. Nixon, as a party defendant. (Resp. Exh. 2-1.) However, because
petitioner was sentenced to concurrent terms of incarceration, the Missouri
Attorney General is not a proper party respondent. 28 U.S.C. § 2254, Rule
2(b).

of November 18, 2001 involving Mr. Henry Wright, Mr. Michael Criddle, and Mr. Michael McGhaw.[2] (Resp. Exh. A2 at 1; Resp. Exh. B at pages 66-71.)[3] On December 13, 2002, the Honorable Joan M. Burger sentenced petitioner to two twenty-year terms and two fifteen-year terms, to run concurrently for a total of twenty years. (Resp. Exh. A-2 at 10-11.) Petitioner is presently incarcerated in the South Central Correctional Center in Licking, Missouri.

Petitioner filed a timely appeal with the Missouri Court of Appeals, alleging that: (1) the trial court erred by abusing its discretion in denying his motion to suppress several out-of-court identifications, and in admitting in-court identifications over his objections; (2) the trial court erred in denying his motion for judgment of acquittal after the close of all evidence in that there was insufficient evidence to prove his guilt beyond a reasonable doubt; and (3) the trial court plainly erred in submitting a jury instruction which allowed the state to submit the case against him on theories of both accomplice liability and principal liability. (Resp. Exh. E, F.) On June 22, 2004, the Missouri Court of Appeals affirmed petitioner's conviction and sentence. (Resp. Exh. F);

_____

[2]According to the trial transcript, Mr. McGhaw's first name is Michael. (Resp. Exh. A1 at 239.) However, the Missouri Court of Appeals refers to Mr. McGhaw as "Thomas McGhaw." (Resp. Exh. F at 2.) The undersigned will herein refer to Mr. Michael McGhaw, but will quote the Missouri Court of Appeals directly when appropriate.

[3]Petitioner was tried with a co-defendant, Mr. Carl Evans, who was found not guilty.

<u>State v. Collins</u>, 136 S.W.3d 847 (Mo. Ct. App. 2004) (<u>per</u> <u>curiam</u>).

Petitioner did not file a motion for post-conviction relief.[4]  As

such, petitioner's conviction and sentence became final on December

13, 2002.

Petitioner filed the instant Petition on September 2,

2004. (Docket No. 2-1.)  Therein, petitioner asserts three grounds

for relief, and specifically,

> 1.   On direct appeal, the court failed to use
> the harmless error standard in reviewing the
> trial court's allegedly erroneous submission
> of a jury instruction regarding both
> accomplice liability and principal liability;[5]
>
> 2.   The trial court erred when it overruled
> petitioner's motion to suppress out-of-court
> identifications of petitioner, and admitted
> in-court identifications over petitioner's
> objections; and
>
> 3.   The trial court erred in submitting a
> jury instruction which petitioner argues
> allowed the state to present the case to the
> jury under the theories of accomplice
> liability and principal liability, where the
> verdict directors required a finding that
> petitioner acted in concert with his co-
> defendant, Carl Evans.
>
> (Docket No. 2-1.)

Respondent argues that petitioner's allegation of error

---

[4]As reason for not so filing, petitioner stated that he did not believe that his attorneys were ineffective.  (Docket No. 2-1 at 3.)

[5]In addition, in Ground 1, petitioner also alleges that the trial court erred by submitting a jury instruction regarding accomplice liability and principal liability.  Because this claim alleging instructional error is repeated in Ground 3 and is the sole basis of Ground 3, the undersigned will refer to and address petitioner's claim regarding appellate review as Ground 1, and the alleged instructional error as Ground 3.

on direct appeal in Ground 1 is procedurally defaulted inasmuch as petitioner failed to properly present the issue to the Missouri courts in a motion for rehearing (as provided by Missouri Supreme Court Rule 84.17(a)(1)) and failed to allege cause and prejudice for such failure.[6]  Respondent further argues that petitioner's claims in Grounds 2 and 3 are without merit and should be dismissed.

## I.  __Exhaustion Analysis__

Before this Court may grant relief on the merits of a petition for a writ of habeas corpus, a petitioner must first exhaust his state law remedies.  28 U.S.C. § 2254(b)(1); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999).  This exhaustion requirement is satisfied if a petitioner has fairly presented his claims first in state court, or if there are no currently available non-futile state remedies.  <u>Smittie v. Lockhart</u>, 843 F.2d 295, 296 (8th Cir. 1988).  The court must first examine whether the constitutional dimensions of Petitioner's claims have been fairly presented to the state court.  <u>Id.</u>  If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which he could present his claims to the state court.  <u>Id.</u>  If a petitioner satisfies the exhaustion requirement in this manner, the federal court still may not reach

---

[6]Respondent does, however, address petitioner's claims of error on direct appeal as alleged in Ground 1 on its merits, and alternately argues that such claim is without merit.

- 4 -

the merits of the petitioner's claim unless the petitioner: (1) demonstrates adequate cause to excuse his state court default, **and** actual prejudice resulting from the alleged unconstitutional error; or (2) that a fundamental miscarriage of justice would occur in the absence of federal review. Coleman v. Thompson 501 U.S. 722, 750 (1991). A review of the record shows that petitioner has satisfied the exhaustion requirement with regard to the claims raised in Ground 2, as he properly raised them in state court, where they were determined on their merits.

In Ground 3, petitioner challenges the trial court's submission of a jury instruction inasmuch as it allowed the state to submit the case against petitioner to the jury on the theories of both accomplice and principal liability. Because petitioner's trial counsel failed to object to the challenged jury instruction, the issue was not properly preserved for appeal, but was nevertheless raised on direct appeal and reviewed by the Missouri Court of Appeals for plain error. (Resp. Exh. F at 15-16.)[7]

There is some uncertainty regarding whether a state appellate court's plain error review of an otherwise procedurally defaulted claim is sufficient to raise the procedural bar. Hornbuckle v. Groose, 106 F.3d 253 (8th Cir. 1997). However, in

---

[7]In finding no error, the Missouri Court of Appeals cited State v. Wurtzberger, 40 S.W.3d 893 (Mo. banc 2001), via which Missouri had eliminated the distinction between principals and accessories, meaning that all people who act in concert to commit a crime are equally guilty. (Id. at 16.) The court concluded that there was sufficient evidence to support the jury's verdicts of guilty regarding petitioner, and that those verdicts were not invalidated by their acquittal of Evans. (Id.)

<u>Burns v. Gammon</u>, 173 F.3d 1089, 1095 (8th Cir. 1999), the Eighth

Circuit suggested that, in this situation, the federal habeas court

undertake the same review as the state court in determining a

petitioner's claim:

> We think we should do what the state court
> did: give the point plain error review. In
> this way, we are not encroaching at all on the
> authority of the state courts; we are fully
> respecting their procedural rule; and we are
> giving the argument the same degree of
> attention that the state courts gave it.
> <u>Id.</u> at 1095.

The undersigned further notes that respondent concedes

petitioner's exhaustion of the claim raised in Ground 3.

Petitioner has also exhausted his claim in Ground 1

through procedural default inasmuch as he failed to properly raise

the claim in state court. Under Missouri law, petitioner had

fifteen days from the date the Missouri Court of Appeals affirmed

his conviction and sentence in which to file a motion for

rehearing. <u>See</u> Mo. R. Civ. P. 84.17. Petitioner never filed a

motion for rehearing, and is now time-barred from raising this

issue in the Missouri state courts. Because petitioner has no

currently available non-futile state remedies by which to pursue

his claim in Ground 1, that claim is deemed exhausted. <u>Smittie</u>,

843 F.2d at 296. Furthermore, the undersigned notes that

respondent concedes petitioner's exhaustion of his state remedies

with regard to Ground 1.

## II. **Procedural Bar**

In Ground 1, petitioner alleges that, on direct appeal, the Missouri Court of Appeals failed to use the harmless error standard in reviewing alleged trial court error. As noted, <u>supra</u>, petitioner never raised this issue in the Missouri state courts.

To avoid procedural default, a claim must be presented at each step of the judicial process in state court. <u>Jolly v. Gammon</u>, 28 F.3d 51, 53 (8th Cir. 1994) (citing <u>Benson v. State</u>, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). Failure to raise a claim in post-conviction proceedings is considered abandonment of that claim. <u>Reese v. Delo</u>, 93 F.3d 1177, 1181 (8th Cir. 1996). When a petitioner's default is due to an "independent and adequate state procedural rule," federal habeas review is barred unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that the federal court's "failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 724.

Petitioner herein asserts no grounds as cause for his procedural default, nor does he demonstrate prejudice. Petitioner further makes no claim of actual innocence, and therefore cannot satisfy the "fundamental miscarriage of justice" exception to showing cause and prejudice. <u>Schlup v. Delo</u>, 513 U.S. 298, 314-15 (1995); <u>Washington v. Delo</u>, 51 F.3d 756, 761 (8th Cir. 1995); <u>see also McCall v. Benson</u>, 114 F.3d 754, 758 (8th Cir. 1997).

Petitioner's claim of appellate court error raised in Ground 1 is therefore procedurally barred from review, and should be dismissed without consideration of its merits.  <u>See</u> <u>Maynard v. Lockhart</u>, 981 F.2d 981 (8th Cir. 1992).

## III.    Claims Addressed on the Merits

The facts adduced at trial and summarized by the Missouri Court of Appeals, in its <u>Memorandum Supplementing Order Affirming Judgment Pursuant to Rule 30.25(b)</u>, (Resp. Exh. F) show the following:

> At approximately 6:30 p.m. on November 18, 2001, a man entered the property located at 3760 Itaska in the City of St. Louis and asked Michael Criddle ("Criddle"), Henry Wright ("Wright"), and Thomas McGhaw ("McGhaw") where he could obtain some marijuana.  This man left after being told that he could not get marijuana there, and immediately after he left, two African-American men entered the premises armed with guns.  One man pointed a gun variously at Criddle, Wright, and McGhaw, while the other man, defendant, pointed a gun at McGhaw and then at Criddle.  Defendant ordered Criddle to remove his black Tommy Hilfiger jean jacket ("Hilfiger jacket") and his watch, which defendant took from him.  In the pockets of the jacket were a key ring with a Tweety Bird emblem and a bottle of liquor, which were taken with the jacket.[FN1]  There was noise produced during this confrontation.  The sounds caused a neighbor in the building, Lawanda Felder ("Felder") to open her door.  Upon opening the door, a gun was thrust into her fact by defendant, who said, "Bitch, shut the door."  Felder shut her door and promptly called the police.  The lights were on in the building at the time of the robbery, which took approximately two minutes.

Defendant and Evans left the building. Wright ran outside, and Criddle followed a minute or two later. Shortly thereafter Police Officer Crawford ("Officer Crawford") arrived at 3760 Itaska in response to a report of a robbery. Officer Crawford met Criddle in the parking lot. Criddle informed him that he had been robbed, and that the robbers took his watch and his Hilfiger jacket, which contained a key ring with many keys and a Tweety Bird emblem. Criddle gave Officer Crawford a vague description of the two men, indicating their general attire, that they were African-American, and that they were both armed with guns. Officer Crawford reported the description of the men and the stolen articles to a police dispatcher according to standard procedure, and the description was then broadcast city-wide.

At approximately 6:52 p.m. that same evening, Police Officers Paul Buck ("Officer Buck") and Michael Spreck ("Officer Spreck") of the City of St. Louis Police Department were on patrol in a marked police vehicle near Gravois and Cherokee. The officers observed a car going west on Cherokee without a front license plate and with a rear license plate that belonged to a truck, not to a car. Officers Buck and Spreck got behind the car, which turned into a parking lot, and they activated the patrol car's lights. There were three men in the car, two in the front seat and one in the rear seat.

Exiting the patrol car, Officer Buck observed defendant toss a small chrome-plated gun in front of the car. Officer Buck ordered the occupants of the vehicle out of the car. The police officers searched the car and the suspects, and found another small gun in the car near where Evans had been seated in the rear. Evans was wearing a black Tommy Hilfiger jean jacket and a silver watch with a blue face. Officer Buck recalled the description broadcast by the dispatcher of the robbery at 3760 Itaska, and called the First District to confirm that the key ring that he found in the jacket worn by Evans matched the

description in the robbery, namely that it had a Tweety Bird emblem on it. Having confirmed this, he then contacted Officer Crawford to bring Criddle to his location for a showup. In the search of the vehicle, the officers also found a red knit cap partially covering up a bottle of liquor, and a chain.

Officer Crawford took Criddle to the location of the suspects. At the scene, Criddle saw Evans wearing the Hilfiger jacket, the keys with the Tweety Bird emblem, and a bottle of Remy [Martin] liquor. Criddle identified defendant as one of the suspects that had robbed him. Defendant, Evans, and the driver of the car, Demarcus Kenney ("Kenney") were all taken to the police station and booked.

The following day Wright went to police to report that he had been robbed during the incident at 3760 Itaska as well, losing a gold chain. Officer Buck prepared a line-up for Wright. The line-up consisted of five people and included defendant, Evans, and Kenney, who were the first three people in the line-up. Wright identified all three. Felder later looked at a photo line-up and identified defendant as the man that had stuck the gun in her face. McGhaw also looked at a photo line-up and identified two suspects, the defendant and Kenney. Defendant and Evans were subsequently charged with two counts of robbery in the first degree, one count of attempted robbery in the first degree, and three counts of armed criminal action.[8]

[FN]Criddle testified that the jacked contained a half pint of Remy, a liquor which he identified as cognac. Presumably he was referring to a bottle of Remy Martin. (footnote in original.)

---

[8]As petitioner does not rebut these facts with clear and convincing evidence, they are presumed correct. 28 U.S.C. 2254(e)(1). The undersigned notes that, not only does petitioner not rebut these facts, he reproduces them almost verbatim in the supplemental pages of his Petition in a section entitled "Statement of Facts." (Docket No. 2-1 at 6-9.)

Petitioner was tried in the Circuit Court of the City of St. Louis before the Honorable Joan M. Burger from September 3 through September 6, 2002. (Resp. Exh. A1). In his defense, petitioner claimed that he was misidentified, and that the state had insufficient evidence to support a conviction. The jury disagreed, and convicted petitioner of one count of robbery in the first degree and one count of attempted robbery in the first degree, and two corresponding counts of armed criminal action. (Resp. Exh. B at pages 66-71.)

## A.   Ground 2 - Identification Testimony

In his second claim for relief, petitioner contends that the admission of the in-court and out-of-court identifications of him as the perpetrator by victims Wright, McGhaw, Criddle and Felder violated his right to due process. Petitioner argues that the in-court identifications were unreliable and tainted by impermissibly suggestive police procedures during the out-of-court confrontations, consisting of a show-up, a physical line-up, and a photo line-up. With respect to each witness, petitioner argues as follows:

> 1.   Wright: identified Kenney, Evans and petitioner in a line-up two days following the incident; was told by police that all three suspects were in the line-up; petitioner and the other two suspects were the first three people in the line-up (petitioner occupied the third position next to Evans); petitioner was one of only two dark-skinned people in the line-up; and after identifying the three suspects, Wright was told by police that he

had chosen correctly;

2. <u>McGhaw</u>: identified petitioner from a photo line-up, which he viewed with Criddle several months after the robbery and during which he may or may not have been wearing his eyeglasses;

3. <u>Criddle</u>: gave police only a vague description of robbers before positively identifying petitioner in a show-up shortly after the robbery; during the show-up, petitioner was present with a man who was wearing a jacket similar to the one taken during the robbery; and

4. <u>Felder</u>: identified petitioner from a photo line-up months after the robbery; during the robbery, viewed petitioner for only a few seconds while he pointed a gun in her face and ordered her to close her door; and merely described petitioner as having a medium build and being taller than she was.

Petitioner raised these points on direct appeal. The Missouri Court of Appeals reviewed the circumstances surrounding the admission of the identification testimony, and found no trial court error in admitting it inasmuch as the police procedures used during the identifications were not unnecessarily suggestive. (Resp. Exh. F.) After so finding, the court declined to reach the issue of reliability.

Section 2254(d)(1) requires federal habeas courts to test the determinations of state courts "only against clearly established federal law, as determined by the Supreme Court of the United States," and prohibits the issuance of a writ of habeas corpus unless the state court's decision is "contrary to or involved an unreasonable application of clearly established federal

law." <u>Williams v. Taylor</u>, 529 U.S. 362, 379 (2000). A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law, or different than the Court's conclusion on a set of materially indistinguishable facts. <u>Williams</u>, 529 U.S. at 412-13; <u>Carter v. Kemna</u>, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. <u>Carter</u>, 255 F.3d at 592, <u>citing</u> <u>Williams</u>, 529 U.S. at 407.

State court factual findings are presumed to be correct. 28 U.S.C. § 2254(d). The presumption applies to factual findings made by the state appellate court. <u>Smith v. Jones</u>, 923 F.2d 588, 590 (8th Cir. 1991). State court findings may not be set aside unless they are unsupported by the record. <u>Sumner v. Mata</u>, 449 U.S. 539, 547-49 (1981); <u>Spence v. Nix</u>, 945 F.2d 1030, 1031 (8th Cir. 1991). Petitioner bears the burden of establishing that the state court's factual determinations are erroneous. <u>Williams v. Armontrout</u>, 912 F.2d 924, 930 (8th Cir. 1990) (en banc) (<u>citing</u> <u>Sumner</u>, 449 U.S. at 550.) As noted, <u>supra</u>, petitioner herein does not challenge the factual findings of the Missouri Court of Appeals. After carefully reviewing the record, the undersigned finds the state court's findings of fact are supported by the record. Thus, to the extent that the findings apply to the claims raised in the instant petition, the findings are adopted herein.

See <u>Williams</u>, 912 F.2d at 930-31.

At the time Petitioner's conviction became final, the law was clearly established that a criminal defendant's constitutional right to due process may be violated by the introduction at trial of evidence obtained by pretrial confrontation procedures that are unnecessarily suggestive and conducive to an irreparably mistaken identification. <u>Stovall v. Denno</u>, 388 U.S. 293 (1967). Procedures such as those challenged in this case have been observed to be unnecessarily suggestive. <u>United States v. Henderson</u>, 719 F.2d 934, 937 (8th Cir. 1983) (show-ups are the most suggestive and therefore the most objectionable method of pretrial identification); <u>United States v. Dailey</u>, 524 F.2d 911, 914 (8th Cir. 1975) (suggestiveness exacerbated because photographic display occurred eighteen months following the crime). It is the introduction of evidence resulting from suggestive identification procedures, not the identification procedures themselves, which raises a constitutional issue. <u>Manson v. Brathwaite</u>, 432 U.S. 98, 113 n. 13 (1977) (citing <u>United States ex rel. Kirby v. Sturges</u>, 510 F.2d 397, 406 (7th Cir. 1975.)) Therefore, the focus of the federal habeas court must be whether, even in the presence of suggestive procedures, the identifications were nonetheless reliable. <u>Neil v. Biggers</u>, 409 U.S. 188, 198 (1972).

To so determine, the court must first examine whether the identification procedures used were unnecessarily suggestive. Evidence of suggestive confrontation procedures, however, without

more, does not require a holding that the petitioner's due process rights were violated. Biggers, 409 U.S. at 198; Pratt v. Parratt, 615 F.2d 486, 488 (8th Cir. 1980). Upon finding unnecessarily suggestive identification procedures, the Court must then examine the "totality of the circumstances" surrounding the witnesses' identifications to determine whether such identifications were reliable, despite any unnecessarily suggestive police procedures. United States v. Anderson, 618 F.2d 487, 491 (8th Cir. 1980); see also Manson, 432 U.S. 98; Neil, 409 U.S. 188. In examining the totality of the circumstances, the habeas court may consider such factors as: the opportunity of the witness to view the criminal during the crime; the witness's degree of attention; the accuracy of any prior description of the criminal; the time elapsed between the crime and the confrontation; and the level of certainty demonstrated during the confrontation. Manson, 432 U.S. at 114; Biggers, 409 U.S. at 199-200. Admission of the identification testimony does not violate due process if the reliability of the identification, judged by the above factors, outweighs the effect of any undue suggestion. Manson, 432 U.S. at 114.

In reviewing petitioner's claim of trial court error in the admission of the identification testimony, the Missouri Court of Appeals identified the appropriate standards for evaluating the suggestiveness and reliability of identification testimony, and specifically noted as follows:

In his first point on appeal, defendant contends

- 15 -

that the trial court erred by abusing its discretion in overruling his motion to suppress the out-of-court identifications of defendant by Criddle, Wright, and McGhaw, and in admitting their in-court identifications of defendant over his objections. Defendant argues that the identifications were the results of "unnecessarily suggestive" police procedures that created a substantial risk of misidentification. Defendant also asserts that the pretrial identifications were unreliable because the victims only had somewhere between five seconds and two minutes to view the robbers during the robbery, and that the descriptions given by the victims conflicted.

Our review of the trial court's ruling on the motion to suppress the pretrial identifications is limited to a determination of whether or not there is substantial evidence to support its decision. <u>State v. Hunter</u>, 43 S.W.3d 336, 340 (Mo. Ct. App. 2001). We will reverse a trial court's ruling on a motion to suppress only if it is clearly erroneous, such that this Court is left with a firm and definite belief that a mistake has been made. <u>Id.</u> In reviewing a trial court's ruling on a motion to suppress, we view the facts and any reasonable inferences arising therefrom in the light most favorable to the trial court's ruling. <u>State v. Edwards</u>, 116 S.W.3d 511, 530 (Mo. banc 2003). We defer to the trial court's factual findings and credibility determination, but review questions of law *de novo*. <u>Hunter</u>, 43 S.W.3d at 340.

In determining the admissibility of identification testimony alleged to have resulted form unnecessarily suggestive pretrial identification procedures, courts apply a two-step test. <u>Id.</u> The initial step involves determining whether the pretrial identification procedure was in fact unduly suggestive. <u>Id.</u> If so, then the court has to determine what impact the suggestive procedures had on the reliability of the identification by the witness. <u>Id.</u> Reliability, not suggestiveness, is the linchpin of due process in determining the admissibility of identification testimony. <u>State v. Middleton</u>, 995 S.W.2d 443, 453 (Mo. banc 1999), *cert. denied*, 528 U.S. 1054, 120 S.Ct. 598, 145 L.Ed.2d 497 (1999). However, an appellant still must first clear the suggestiveness barrier before obtaining a reliability review. <u>Hunter</u>, 43 S.W.3d at 340.

Defendant contends that the showup at which Criddle

identified him was impermissibly suggestive because defendant was the only dark-skinned suspect in the three-person showup, and because Evans was wearing a Tommy Hilfiger jacket similar to that stolen from Criddle. We disagree. (footnote omitted.) Pretrial showups have been held to be valid and not impermissibly suggestive even when the subject is in handcuffs and police officers told the witness that the subject was a suspect or the man that they had arrested. <u>State v. Moore</u>, 925 S.W.2d 466, 467 (Mo. Ct. App. 1996); <u>State v. Secrease</u>, 859 S.W.2d 278, 279 (Mo. Ct. App. 1993). Pretrial showups have also been held valid in many instances where the witness is shown only one suspect. <u>See</u> <u>State v. Lawrence</u>, 64 S.W.3d 346, 354 (Mo. Ct. App. 2002); <u>Moore</u>, 925 S.W.2d at 467; <u>Secrease</u>, 859 S.W.2d at 279-80. As for Evans wearing a Tommy Hilfiger jacket being unduly suggestive, pretrial identifications have been held not to be unduly suggestive just because of the characteristics or color of the clothing of persons in the pretrial identification. <u>State v. Weaver</u>, 912 S.W.2d 499, 520 (Mo. banc 1995), <i>cert. denied</i>, 519 U.S. 856, 117 S.Ct. 153, 136 L.Ed.2d 98 (1996). "The rule seems to be that a line-up will be impermissibly suggestive only if the clothing is the sole basis for identification." <u>Id.</u> We also note that Criddle testified that he did not identify Evans at the showup. We find the fact that a suspect other than the defendant in a showup wore clothing similar to that stolen from a witness is not unduly suggestive. We also note that Missouri courts have reached the conclusion that the sooner that an identification occurs after a crime, the more reliable it is because it takes place when details are fresh in the victim's mind. <u>State v. Petalino</u>, 890 S.W.2d 679, 682 (Mo. App. 1994). Police showups are not police linuep

s, and police officers seldom, if ever, have the option of procuring volunteers from a holdover cell to participate in a showup along with an individual suspect. Criddle's pretrial identification of defendant was not tainted by unnecessarily suggestive police procedures, and the trial court did not err in denying the motion to suppress, nor in overruling defendant's objection at trial.

Defendant also argues that the identification procedures in Wright's pretrial identification of defendant in a police line-up were impermissibly suggestive and rendered his identification unreliable such that the trial court should not have admitted either the out-of-court identification or the in-court identification. Defendant asserted several improprieties in the procedures in Wright's pretrial identification,

namely: that Officer Buck placed all three suspects in
the same five-man line-up, which contained only one dark-
skinned male other than defendant; that Officer Buck
lined up the suspects as the first, second, and third
persons in the line-up; that Officer Buck told Wright
prior to the line-up that he had all three of the
suspects in it; and that Officer Buck told Wright after
he had identified defendant, Evans, and McKenney [sic] in
the line-up that he had selected the correct suspects.

Wright viewed the line-up the day after the robbery.
Officer Buck did place all three suspects in a five-man
line-up, and that line-up had only one man with dark skin
other than defendant.  Officer Buck could not recall if
he had indicated to Wright if any or all of the suspects
were in the line-up, and admitted that he had not done
many lineups before and was not following a particular
set of guidelines in conducting the line-up.  The three
suspects were lined up from left-to-right as the first,
second, and third persons in the line-up.  Wright
identified defendant, Evans, and Kenney. He testified at
trial that Officer Buck had told him that all of the
suspects were in the line-up prior to his viewing of it,
and after he had identified the suspects, that he had
done so correctly.  Officer Buck did not recall making
such a statement.  The record, however, indicates that
the trial court had doubts about Wright's credibility on
this issue.

The fact that multiple suspects were in a single
line-up, that there was only one dark-skinned non-suspect
included in the line-up, or that Wright may have been
told that suspects were in the line-up do not make the
pretrial identification procedures impermissibly
suggestive.  In State v. Dayton, 535 S.W.2d 479 (Mo. App.
1976), four suspects were placed in a line-up of six men.
The defendant in that case argued that the lack of more
non-suspects in the line-up made the line-up unduly
suggestive, and further contended that the two non-
suspects were readily distinguishable from the suspects
because of physical appearance and attire.  Id. at 487-
88.  The court did not find these circumstances to be
unduly suggestive.  Id. at 488-89.  See also State v.
Nguyen, 880 S.W.2d 627, 633 (Mo. App. 1994), *overruled on
other grounds by* State v. Driver, 915 S.W.2d 52 (Mo. banc
1995) (footnote omitted).

A line-up is not made unnecessarily suggestive due

to the number of non-suspects in a line-up or because the non-suspects are different from a suspect in physical appearance or attire. <u>See</u> <u>Weaver</u>, 912 S.W.2d at 530; <u>State v. Cosby</u>, 976 S.W.2d 464, 468-69 (Mo. App. 1998). A police station is not a theatrical casting office, and all that is required is that a reasonable effort is made to find physically similar participants. <u>State v. Bullington</u>, 684 S.W.2d 52, 55 (Mo. App. 1984) (quoting <u>State v. Burns</u>, 671 S.W.2d 306, 310 (Mo. App. 1984)). The order in which people are arranged in a line-up does not make the line-up improperly suggestive. <u>See</u> <u>State v. Pennington</u>, 618 S.W.2d 614, 620 (Mo. 1981), *vacated on other grounds by* <u>Missouri v. Pennington</u>, 459 U.S. 1192, 103 S.Ct. 1171, 75 L.Ed.2d 423 (1983). Even if Officer Buck had told Wright that the suspects were in the line-up, this would not make it impermissibly suggestive. "It is only natural that a victim of a crime asked to view a line-up would believe that it contains a suspect." <u>Cosby</u>, 976 S.W.2d at 469. A statement confirming such a belief is not prejudicial. <u>Id.</u> <u>See also</u> <u>State v. Simms</u>, 810 S.W.2d 577, 582 (Mo. App. 1991). Regarding the assertion that Officer Buck told Wright after the line-up that he had properly identified the suspects, we note that if true, this still would not invalidate the pretrial identification as it could not have possibly influenced it. <u>See</u> <u>State v. Green</u>, 635 S.W.2d 42, 45 (Mo. App. 1982). If the pretrial identification is not unduly suggestive, the pretrial identification and the in-court identification are admissible. <u>State v. Hunter</u>, 43 S.W.3d 336, 340 (Mo. App. 2001).

Defendant also contends that the identifications made my [sic] McGhaw and Felder in and out of court were flawed. Defendant correctly asserts that McGhaw did not view a photo line-up until approximately eight months after the robbery. This, however, goes to reliability, not to improper suggestiveness. Defendant argues that McGhaw's pretrial identification was made using impermissibly suggestive procedures because he viewed the photo line-up with Criddle and Wright. The record does not reflect that McGhaw viewed the photo line-up with Criddle and Wright. The record does not reflect that McGhaw viewed the photo line-up with Wright. McGhaw did testify that he viewed a photo line-up with Criddle, but the record does not indicate that the two actually viewed the photo line-up simultaneously, or that Criddle influenced McGhaw's pretrial identification. There was the following exchange:

Q.    You looked at some pictures, some photographs of a line-up, correct?

A.    [McGhaw]. Yes.

Q.    And you looked at those pictures with your nephew[,] Mr. Criddle, correct?

A.    Yes.

Q.    Okay.  What I mean by that is you and Mr. Criddle together looked at those line-up pictures, correct?

A.    I don't understand what you're saying?

Q.    Well, Mr. McGhaw, you looked at a picture of a line-up in this case?

A.    Yes.

The matter was not clarified any further during this or subsequent cross-examination.  It would be speculation to assume that Criddle and McGhaw viewed the photos simultaneously or that Criddle influenced McGhaw's pretrial identification, as there is no evidence that they discussed the lineups.  From the testimony it is at least as reasonable to infer that the police brought line-up photos to the residence at Itaska and showed them to both Criddle and McGhaw during the same visit, but that they viewed them separately.  This would be no different from having two witnesses view a line-up at a police station one after the other.  We view the evidence and all reasonable inferences in the light most favorable to the verdict.  As for Felder's pretrial identification, nothing in the record indicates that anything was impermissibly suggestive about it.  The issue raised concerning the interval between the robbery and her pretrial identification go to the reliability of her identification, not to impermissibly suggestive procedures.

Having found that the pretrial identification procedures were not impermissibly suggestive, we need not address the issue of reliability.  However, we note that weight and credibility of identification testimony is for the jury to determine, not this Court.  State v. Merrill, 990 S.W.2d 166, 172 (Mo. App. 1999).  We further note that the testimony of a single witness is sufficient to

support a conviction, even if that testimony is inconsistent. Id. Point denied.

(Resp. Exh. F at 6-12.)

Following a review of the trial transcript and the identification testimony at issue, the undersigned finds that the record supports the conclusion that the identification testimony at issue was sufficiently reliable such that there was no substantial risk of misidentification. The fact that the state court did not engage in an analysis of the reliability of the identifications, having ceased its inquiry upon finding that the police procedures used during the confrontations were not unnecessarily suggestive, does not demand the issuance of a writ. The absence of legal analysis by the state court as to the merits of the claim "does not mean that [petitioner] is necessarily entitled to habeas relief[.]" Huss v. Graves, 252 F.3d 952, 956 (8th Cir. 2001). This Court may grant habeas relief only if the state court's decision is "substantially different" from what the decision would have been if that court had used the appropriate legal standard as established by the United States Supreme Court. Id. (quoting Williams, 529 U.S. at 405). This Court therefore applies Supreme Court precedent to the facts of this case to determine whether petitioner is entitled to relief on the instant due process claim which was brought on direct appeal, and finds that the decision was well-based on law and fact and was not "contrary to," nor did it involve an "unreasonable application of," clearly established federal law.

See 28 U.S.C. § 2254(d)(1).

The undersigned turns first to Ms. Felder's identification of petitioner via a photo line-up, which took place months after the robbery. While the suggestiveness of the photo line-up was indeed exacerbated by the length of time elapsed between the crime and the confrontation, Felder's identification of petitioner nonetheless bore sufficient indicia of reliability. The record establishes that Felder gave police an accurate description of petitioner's hat and physical stature. (Resp. Exh. A1 at 270-71; 275.) She testified that petitioner looked straight at her while pointing a gun in her face, and that petitioner was her main focus at that time. (Id. at 273-74); See Hulsey v. Sargent, 821 F.2d 469, 473 (8th Cir. 1987) (noting that a criminal pointing a rifle at a witness was an act that "surely commanded" the witness's "undivided attention.") Felder also testified that she was certain that she was not mistaken regarding her identification of petitioner. (Id. at 273-74); Trevino v. Dahm, 2 F.3d 829, 833 (8th Cir. 1993) (where eyewitnesses are very certain of their identification, the reliability of such identification is strengthened.) The foregoing indicia of reliability outweighs any suggestiveness which may have been present due to the length of time elapsed between the robbery and Felder's identification of petitioner.

Mr. McGhaw also identified petitioner via a photo line-up months after the crime and, due to the time elapsed between this

the robbery and this confrontation, the suggestiveness of that photo line-up was exacerbated. However, McGhaw's identification of petitioner bore sufficient indicia of reliability such that any suggestiveness is outweighed. McGhaw had ample opportunity to view petitioner at close range during the commission of the crime, inasmuch as petitioner pointed a gun in his face, patted him down searching for money and/or valuables, pushed him out of the way and "had [me] against a wall." (<u>Id.</u> at 242-43.) McGhaw testified that he was certain of his identification of petitioner. (<u>Id.</u> at 261-62); <u>Trevino</u>, 2 F.3d at 833 (reliability of identification testimony bolstered by witness' certainty.) Furthermore, the record does not support the conclusion that Criddle influenced McGhaw's identification of petitioner, or even that McGhaw and Criddle viewed the photo line-up simultaneously, as petitioner contends. The foregoing indicia of reliability outweighs any suggestiveness caused by the time elapsed between the robbery and McGhaw's identification of petitioner via the photo line-up.

To the extent that Mr. Criddle's identification of petitioner at the show-up confrontation at the scene of the traffic stop may be considered impermissibly suggestive, <u>see</u> <u>Clark v. Caspari</u>, 274 F.3d 507, 511 (8th Cir. 2001); <u>Henderson</u>, 719 F.2d 934, 937 (8th Cir. 1983) (show-ups are the most suggestive and therefore the most objectionable method of pretrial identification), a review of the totality of the circumstances here shows that Criddle's identification of petitioner nonetheless bore

sufficient indicia of reliability. The record establishes that Criddle had ample opportunity to observe petitioner's uncovered face in a lighted room during the robbery when petitioner ordered him to remove his jacket and watch, which he then took from him. (Id. at 332-35.) Criddle testified that, immediately following the robbery, he described to police petitioner's clothing, hat, skin tone, and stature. (Id. at 337.) Criddle then positively identified petitioner at both a show-up minutes after the robbery, and later from a photographic line-up. (Resp. Exh. A1 at 338-39; 346.) Criddle testified that he was certain of his identification of petitioner as the man who had robbed him at gunpoint. (Id. at 354-55); Trevino, 2 F.3d at 833 (reliability of identification testimony bolstered by witness' certainty.) Furthermore, as the Eighth Circuit has noted, show-ups are not automatically unnecessarily suggestive, and are valuable inasmuch as they are immediate confrontations which allow identification before the suspect has altered his appearance and while the witness' memory is fresh, and permit the quick release of innocent persons. Johnson v. Dugger, 817 F.2d 726, 729 (8th Cir. 1987) (citing Frank v. Blackburn, 605 F.2d 910, 912 (5th Cir. 1979)). Show-ups are not unnecessarily suggestive unless the police aggravate the suggestiveness of the confrontation. Id. In the case at bar, the police did nothing to aggravate the suggestiveness of the show-up. Finally, regarding Criddle's subsequent identification via photo line-up, the undersigned notes that, although the photo line-up was

arguably suggestive due to the time elapsed between it and the robbery, Criddle's identification of petitioner was consistent in both the show-up, which occurred minutes after the robbery, and the photo line-up, which occurred months after the robbery. Based upon the totality of the circumstances surrounding Criddle's identification of petitioner at the show-up and the photo line-up, the undersigned finds that Criddle's identification bore sufficient indicia of reliability to outweigh any inherent suggestiveness.

With respect to Mr. Wright, the record establishes that he identified petitioner in a physical line-up no more than two days after the robbery. (Id. at 292.) Although the record establishes that police told him that the suspects were present in the line-up, Wright testified that police also told him that he was required to make the identifications on his own. Id. Wright testified that he made his own choice when he made the positive identifications during the line-up, and that police did not tell him what position any of the suspects occupied. (Id. at 292, 322.) Wright testified that he was certain of his identification of petitioner. (Id. at 287, 295); Trevino, 2 F.3d at 833 (reliability of identification testimony bolstered by witness' certainty.) Furthermore, during the robbery, Wright had substantial opportunity to view petitioner's uncovered face in a lighted room, and had further opportunity to observe petitioner outside the apartment following the robbery; his attention was heightened by the fact that petitioner had a gun pointed in his face (see Hulsey, 821 F.2d

at 473); and the line-up took place no more than two days following the incident. (Resp. Exh. A1 at 284, 288, 290-92.)

Based upon the totality of the circumstances of this case, the identification procedures used in the out-of-court confrontations did not produce unreliable in-court identifications of petitioner, and the trial court did not err in either refusing to suppress the out-of-court identifications, or in overruling petitioner's objections to the in-court identifications. See U.S. v. Love, 692 F.2d 1147, 1152 (8th Cir. 1982) (identification procedures used for various witnesses did not produce unreliable in-court identifications of bank robbery suspects where robbery took three to four minutes, one witness had provided police with fairly accurate description of robbers prior to viewing photo display, photo display took place the day after the crime, and the line-up was presented a few days later); see also U.S. v. Bierey, 588 F.2d 620, 625 (8th Cir. 1978) (identification evidence reliable despite the passage of eight or nine months between crime and line-up when three out of four witnesses identified robber at a line-up; witnesses' descriptions of robber were "fairly" accurate; robber did not conceal his face during the robbery; and one witness was very certain of the identification.)

Because it cannot be said that the Missouri Court of Appeals' denial of relief on the instant claim was "substantially different" from what the decision would have been if that court had conducted a detailed examination of the reliability of the

identifications using the standard set forth by the United States Supreme Court, the state court's findings are entitled to deference by this Court. <u>Jackson v. Virginia</u>, 443 U.S. 307, 323 (1979). The claim raised in Ground 2 of the instant petition should therefore be denied. <u>Huss</u>, 252 F.3d at 956.

**B.    Ground 3 - Jury Instruction**

In Ground 3, petitioner claims that his due process rights were violated by the trial court's submission of a jury instruction which petitioner argues allowed the state to submit the case to the jury under the theories of both accomplice liability and principal liability. Petitioner argues that this jury instruction violated his rights to due process inasmuch as it directed the jury that it could find any one or both of the defendants guilty, when petitioner's guilt was premised on his having acted in concert with Evans, who was acquitted. Petitioner raised this point on direct appeal, and the Missouri Court of Appeals denied the claim. <u>Collins</u>, 136 S.W.3d 847.[9]

---

[9]Because defense counsel did not object to the jury instruction, the Missouri Court of Appeals reviewed petitioner's claim for plain error, pursuant to Mo. R. Crim. Pro. 30.20, which states that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." In Missouri state court, review for plain error involves a two step process. The first step is to determine if error has occurred. This is done by determining whether the claim for review "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." Mo. R. Crim. Pro. 30.20; <u>State v. Brown</u>, 902 S.W.2d 278, 284 (Mo. banc 1995). All prejudicial error is not plain error. "Plain errors are those which are 'evident, obvious, and clear [.]'" <u>State v. Scurlock</u>, 998 S.W.2d 578, 586 (Mo. Ct. App. 1999) (quoting <u>State v. Bailey</u>, 839 S.W.2d 657, 661 (Mo. App. W.D. 1992)). If plain error is found, it is up to the discretion of the court whether to proceed to the second step, determining "whether the claimed error resulted in manifest injustice or

At the time petitioner's conviction became final, the law was clearly established that a defendant in a criminal trial has a constitutional right to be convicted only upon the state's proof and a jury's finding beyond a reasonable doubt that he committed every essential element of the offense charged. <u>Patterson v. New York</u>, 432 U.S. 197 (1977) (state bears burden of proof); <u>In re Winship</u>, 397 U.S. 358, 361-64) (proof beyond a reasonable doubt required). The state must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. <u>See</u> <u>Sandstron v. Montana</u>, 442 U.S. 510, 520-21 (1979). Instructions which do not have the effect of lessening the state's burden of proof on the offenses charged do not violate <u>Winship</u>'s due process guarantee. <u>Martin v. Ohio</u>, 480 U.S. 228 (1987); <u>Gilmore v. Taylor</u>, 508 U.S. 333, 342-43 (1993) (dictum). Where a petitioner claims that an instruction confused the jury, federal law requires the court to determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." <u>Id.</u> at 72 (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973)). The challenged instruction "must be considered in the context of the instructions as a whole and the trial record." <u>Id.</u> However, jury instructions challenged under state law do not provide a basis for federal habeas relief. <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-72 (1991).

---

miscarriage of justice." <u>Id.</u> at 587.

The jury instruction petitioner challenges, Instruction 15, related to Count I which charged petitioner with the robbery in the first degree of Michael Criddle. That instruction reads as follows:

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on November 18, 2001, in the City of St. Louis, State of Missouri, the defendant Joseph Collins or the defendant Carl Evans took a jacket and a watch, which was property in the possession of Michael Criddle, and

Second, that defendant Joseph Collins or the defendant Carl Evans did so for the purpose of withholding it from the owner permanently, and

Third, that defendant Joseph Collins or the defendant Carl Evans in doing so threatened the immediate use of physical force on or against Michael Criddle for the purpose of preventing resistance to the taking of the property, and

Fourth, that in the course of taking the property, the defendant Joseph Collins or the defendant Carl Evans displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument,

then you are instructed that the offense of robbery in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fifth, that with the purpose of promoting or furthering the commission of that robbery in the first degree, the defendant Joseph Collins acted together with or aided the defendant Carl

Evans in committing that offense,

> then you will find the defendant Joseph Collins guilty under Count I of robbery in the first degree.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant Joseph Collins not guilty of that offense.
>
> MAI-CR 323.02 (Modified by 304.04)
> Submitted by State
> (Resp. Exh. B at 50-51.)[10]

This Court is limited to plain error review because, due to the lack of objection at trial, the Missouri Court of Appeals only reviewed the issue for plain error. <u>Hornbuckle</u>, 106 F.3d at 257. Plain error is error which is both obvious and substantial. <u>United States v. Frady</u>, 456 U.S. 152, 163 (1982), (<u>citing</u> <u>United States v. Gerald</u>, 624 F.2d 1291, 1299 (5th Cir. 1980)).

A review of the record reveals no obvious and substantial error. In denying petitioner's claim, the Missouri Court of Appeals found no plain error inasmuch as, according to Missouri law, there was no distinction between principals and accessories, and that all people who act in concert to commit a crime are equally guilty. (Resp. Exh. F at 16.) It is not this Court's prerogative to question a state court's interpretation of its own law. In fact, "[a] state's interpretation of its own law is virtually unreviewable by a federal court." <u>Taylor v. Bowersox</u>, 329 F.3d 963, 968 (8th

---

[10]A similar instruction, Instruction 19, was given with respect to the attempted robbery of Michael McGhaw. Defendant was convicted under that instruction of the attempted robbery of Mr. McGhaw.

Cir. 2003); <u>see</u> <u>also</u> <u>Estelle</u>, 502 U.S. at 67-68; <u>Gee v. Groose</u>, 110 F.3d 1346, 1349 (8th Cir. 1997) (Re-examination of state court determinations of state law questions is outside the province of the federal habeas court.)

It is, however, within the province of this Court to determine whether the challenged jury instruction violated petitioner's constitutional right to due process of law. A review of the record and applicable United States Supreme Court precedent, however, reveals no constitutional violation. As noted above, the Missouri Court of Appeals interpreted state law to find that the jury instruction adequately instructed the jury regarding the necessary elements to return a guilty verdict, inasmuch as Missouri law did not distinguish between principals and accessories. (Resp. Exh. F at 16.) This decision was not "contrary to," nor did it involve an "unreasonable application of," Supreme Court precedent, inasmuch as there is no distinction between the principle applied by the Missouri Court of Appeals and that which has recently been applied by the United States Supreme Court.

In <u>Standefer v. U. S.</u>, 447 U.S. 10 (2006), the Supreme Court granted <u>certiorari</u> to decide the issue of whether a defendant accused of aiding and abetting in the commission of a federal offense may be convicted after the named principal had been acquitted of that offense, and held that such a defendant could indeed be convicted. 447 U.S. 10, 11 (2006). In so holding, the Court found that all people engaged in violating a federal criminal

statute were "principals," and stated "[a]s such, they are punishable for their criminal conduct; *the fate of other participants is irrelevant*." <u>Id.</u> at 20. (emphasis added). Similarly, in <u>Gonzales v. Duenas-Alvarez</u>, __ U.S. __, 127 S.Ct. 815 (2007), the Court overruled the Ninth Circuit's determination that the conduct of a defendant who merely aided and abetted a theft did not fall into the definition of theft, inasmuch as every state and federal jurisdiction had "expressly abrogated the distinction" between principals and aiders and abettors. <u>Id.</u> at 820.

In the case at bar, there is no threat that the challenged instruction allowed the jury to base its verdict on anything less than a finding beyond a reasonable doubt that petitioner committed every essential element of the offense charged. There is no constitutional due process violation, inasmuch as there is no distinction between the principle applied by the Missouri Court of Appeals and that applied by the United States Supreme Court. Therefore, petitioner's claim raised in Ground 3 of his petition should be denied.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that petitioner Joseph Collins' petition for writ of habeas corpus (Docket No. 2-1) be dismissed without further proceedings.

The parties are advised that they have until July 23, 2007

in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 257 (8th Cir. 1990).

UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of July, 2007.